**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00611-CR

———————————

**JONATHAN BRADSHAW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 18-DCR-080889**

## MEMORANDUM OPINION

A jury convicted appellant Jonathan Bradshaw of murder and sentenced him to 60 years' imprisonment.[1]  In four issues on appeal, Bradshaw contends that (1) the evidence is legally insufficient to support his conviction; (2) the failure to conduct a

---

[1]     TEX. PENAL CODE § 19.02(b).

factual sufficiency review of the evidence violates his right to due process and equal protection; (3) the trial court erred by admitting certain evidence at trial; and (4) the prosecutor engaged in improper closing arguments.

We affirm.

## Background

On January 20, 2018, Ladarian Welch, also known as "Tre" or "Trey," was "hanging out" with a group of friends, including Colin Houston, in front of his mother's house on Willie Melton Street in Kendleton, Texas. Another group of individuals, including Nikie Flores (a former girlfriend of Bradshaw's twin brother Johnny), Amber Flores (Nikie Flores's sister), and Kylie Hardy (Houston's fiancée), were gathered in front of Bradshaw's grandmother's house, which was a few houses down from Welch's mother's house on Willie Melton Street.

That evening, Bradshaw's twin brother Johnny was seen by multiple eyewitnesses speeding up and down Willie Melton Street. Welch was concerned that Johnny might hit cars parked on the street and told Johnny to slow down. Johnny drove to the end of Willie Melton Street and picked up Bradshaw. Johnny then drove with Bradshaw back to where Welch and the others were hanging out.

Bradshaw got out of Johnny's car and told Welch "not to talk to his brother th[at] way" and to "mind [his] business." Welch, who was not holding a weapon,

2

put up his hands. Bradshaw shot Welch multiple times. Johnny drove off in his car, and Bradshaw ran from the scene.

Nikie Flores, Amber Flores, Houston, and Hardy, who all knew Bradshaw and Johnny, witnessed the shooting. They identified the shooter as Bradshaw, who has "dreads" and darker skin than his brother Johnny. Welch's mother, Myosha Humphrey, heard several gunshots and came out of her house. When she walked outside, she saw her son start to walk up the driveway toward her and Bradshaw, whom she had known since he was a child, behind Welch saying, "Motherf****r, I know you didn't think I was going to let you make it f****ing with my family."

Humphrey saw Welch fall to the ground and saw blood on his back. Humphrey said to Bradshaw, "you shot my son," and Bradshaw responded "ah" before running away.

The medical examiner testified that Welch was shot multiple times and that the gunshot wound to his chest, which injured his heart and lungs, was fatal. The medical examiner also noted that there were no defensive injuries, such as scrapes or bruises on Welch's hands.

Investigator St. Hilaire of the Fort Bend County Sheriff's Office testified that he recovered four spent shell casings, which appeared to have been ejected from a semi-automatic handgun. St. Hilaire testified that some of the casings were as far as 30 feet from the driveway.

**Legal Sufficiency of the Evidence**

In his first issue, Bradshaw challenges the sufficiency of the evidence to support his murder conviction. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2).

## A. Standard of Review

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In a legal sufficiency review we consider all of the evidence in the light most favorable to the verdict, and we decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

The evidence may be circumstantial or direct, and juries may draw multiple reasonable inferences from the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012). A jury may believe or disbelieve some

or all of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). The testimony of a single eyewitness can be sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (en banc). We presume that the jury resolved any conflicting inferences in favor of the verdict, and we defer to that determination. *Merritt*, 368 S.W.3d at 525–26.

## B. Analysis

Bradshaw contends that, despite multiple accounts from eyewitnesses to the shooting identifying him as the shooter, the physical evidence—the physical location of the shell casings behind where eyewitnesses testified the shooting took place—makes it "physically impossible" for Bradshaw to have shot Welch. Therefore, according to Bradshaw, the evidence is legally insufficient to support his conviction.

Although Bradshaw maintains the physical location of the shell casings found at the crime scene makes it "impossible" for him to have shot Welch, he points only to exhibits and testimony showing the location where the shell casings were found. He has not directed us to any testimony in the record supporting his conclusion that these locations made it "physically impossible" for him to have shot Welch.

Even if that testimony was in the record, as the State points out, the testimony would merely create a conflict or inconsistency in the evidence. It would not render the evidence legally insufficient. As we must under a legal-sufficiency review, we

5

presume that the jury weighed the evidence and resolved any inconsistencies in favor of the verdict. *Merritt*, 368 S.W.3d at 525–26; *see also Arrellano v. State*, 555 S.W.3d 647, 651 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (concluding inconsistencies in witness testimony did not render evidence legally insufficient because medical examiner testified that victim was killed by gunshot wound to head and multiple eyewitnesses identified defendant as shooter).

Here, there was evidence from multiple eyewitnesses supporting Bradshaw's murder conviction. The medical examiner testified that Welch was shot multiple times and that the gunshot wound to his chest, which injured his heart and lungs, was fatal. Four eyewitnesses who knew Bradshaw personally—Nikie Flores, Amber Flores, Colin Houston, and Kylie Hardy—all testified that, after a verbal altercation between Welch and Bradshaw's brother Johnny, they saw Bradshaw shoot Welch multiple times. Nikie Flores, Houston, and Hardy all testified that Welch did not act aggressively toward Bradshaw before the shooting and did not have a weapon.

Welch's mother also testified that, after hearing the gunshots, she came out of her house and saw Welch walk up her driveway and heard Bradshaw behind Welch say: "Motherf*****r, I know you didn't think I was going to let you make it f****ing with my family." Welch's mother accused Bradshaw of shooting her son, to which Bradshaw responded "ah" before running away.

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a rational factfinder could have found beyond a reasonable doubt that Bradshaw shot and killed Welch. *Jackson*, 443 U.S. at 319; *Arrellano*, 555 S.W.3d at 651.

We overrule Bradshaw's first issue.

**Factual Sufficiency Review**

In his second issue, Bradshaw seeks a factual-sufficiency review of the evidence. Bradshaw argues that the failure of Texas courts to conduct a separate factual-sufficiency review of the evidence in criminal cases violates the Texas Constitution's dictate that "the decision of the [Texas Courts of Appeals] shall be conclusive on all questions of fact brought before them on appeal or error." TEX. CONST. art. V, § 6(a). According to Bradshaw, the Texas Court of Criminal Appeals' adoption of the single standard of review for sufficiency challenges, *see Brooks v. State*, 323 S.W.3d at 901, violates his due process and equal protection rights under both the federal and state constitutions and his right to a remedy of a new trial.

As directed by the Texas Court of Criminal Appeals, Texas intermediate courts must apply one standard of review—the legal sufficiency standard adopted in *Jackson v. Virginia*—to evaluate the sufficiency of the evidence, whether legal or factual. *See Brooks*, 323 S.W.3d at 901; *see also Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011); *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim.

7

App. 2010). Although Bradshaw is correct that the Texas Constitution dictates that an intermediate appellate court's decision "shall be conclusive on all questions of fact brought before them on appeal or error," TEX. CONST. art. V, § 6(a), "the Texas Court of Criminal Appeals has the authority to determine questions of law, including the standard of review that an intermediate appellate court must use in conducting factual review." *Kiffe v. State*, 361 S.W.3d 104, 109–10 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

As an intermediate Texas appellate court, we are bound to follow the precedent of the Texas Court of Criminal Appeals. As a result, we must apply the *Jackson* sufficiency standard of review to legal or factual sufficiency challenges concerning the elements of a criminal offense. *Id.* We therefore reject Bradshaw's challenge to the sufficiency standard of review announced in *Brooks*. *Id.*[2]

Having determined that there is sufficient evidence under the *Jackson* standard of review in addressing Bradshaw's first issue, and declining to conduct a separate factual sufficiency review, we overrule Bradshaw's second issue.

---

[2] *See also Rivera v. State*, No. 01-17-00351-CR, 2018 WL 3352990, at *4 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (mem. op., not designated for publication) (rejecting similar argument and holding that "[t]he Texas Court of Criminal Appeals has directed us to apply Jackson's standard to review all evidentiary-insufficiency claims; as a lower court, we are bound to follow its directive"); *Beckett v. State*, No. 01-16-00505-CR, 2017 WL 5623532, at *3 (Tex. App.—Houston [1st Dist.] Nov. 21, 2017, no pet.) (mem. op., not designated for publication) (same).

8

**Evidentiary Challenges**

In his third issue, Bradshaw contends the trial court erred by admitting certain exhibits at trial. Bradshaw initially asserts that he was unduly prejudiced by the trial court's admission of 911 calls because the trial court did not first listen to the calls outside the presence of the jury to determine whether they contained testimonial statements. Next, Bradshaw asserts the trial court erred in admitting crime scene photographs of Welch's body.

**A. 911 Calls**

Bradshaw argues he was "unduly prejudiced" when the trial court admitted multiple 911 calls into evidence without first listening to them outside of the presence of the jury to determine whether they contained testimonial statements in violation of the Confrontation Clause of the Sixth Amendment and the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). According to Bradshaw, his "fundamental rights" were violated by the trial court's failure to preview these calls to ensure that no testimonial statements were admitted.

**1. Standard of Review and Applicable Law**

In deciding the constitutional issue of whether the admission of a statement of another violates a defendant's Sixth Amendment confrontation right, appellate courts review the trial court's ruling de novo. *See Lilly v. Virginia*, 527 U.S. 116, 137 (1999) (stating that courts should "independently review" whether out-of-court

statements violate the Confrontation Clause); *see also Campos v. State*, 186 S.W.3d 93, 96 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The Confrontation Clause of the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has interpreted the Confrontation Clause to "demand" that out-of-court testimonial statements by witnesses are barred unless (1) the witnesses are unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witnesses regardless of whether such statements are deemed reliable by the court. *Crawford*, 541 U.S. at 68.

The Supreme Court in *Crawford* declined to give a comprehensive definition of testimonial hearsay; however, the Court stated that the term applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [responses] to police interrogations." *Id.  Crawford* thus holds that a "core class of 'testimonial' statements" includes: (1) ex parte in-court testimony, (2) affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51–52.

Any Confrontation Clause error is subject to a constitutional harm analysis under Texas Rule of Appellate Procedure 44.2(a). TEX. R. APP. P. 44.2(a); *see Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Under Rule 44.2(a), if the appellate record reveals a constitutional error, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

Addressing Confrontation Clause errors, the Texas Court of Criminal Appeals has instructed how courts of appeals must conduct this harm analysis:

> In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt . . . the following factors are relevant: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case. [T]he emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." That is to say, the question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved

11

the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Langham*, 305 S.W.3d at 582.

## 2.    Analysis

To be entitled to reversal on this issue, Bradshaw had to demonstrate that the 911 calls were testimonial in nature, that his rights under the Confrontation Clause were violated, and that such error was harmful, and thus reversible, under Rule 44.2(a). Bradshaw failed to do so.

Bradshaw consistently refers to the "multiple 911 calls" that were introduced at trial. However, he fails to identify for this Court which of these "multiple 911 calls" he objected to at trial and challenges on appeal. As the State notes in its brief, Bradshaw explicitly waived his objections to at least one of the 911 calls at trial. Bradshaw also fails to include any citations to the record demonstrating where the objectionable 911 calls were introduced, where he raised his Confrontation Clause objection, and where the trial court ruled on that objection.

To preserve error on appeal, a party must timely object and state the grounds for the objection and demonstrate that the trial court either ruled or refused to rule on the objection. TEX. R. APP. P. 33.1(a). In addition, to properly present an issue on appeal, a party's brief "must contain a clear and concise argument for the

contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1; *see also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellant waives issue on appeal if he does not adequately brief that issue by presenting supporting arguments and authorities). Bradshaw has done none of that.

Even more fundamentally, Bradshaw has presented no actual analysis on the merits of his Confrontation Clause argument. Other than a citation to the general rules related to the Confrontation Clause analysis that courts are required to conduct and a conclusory statement that he was "unduly prejudiced" by the trial court's failure to conduct an analysis of the testimonial nature of the 911 calls, Bradshaw has advanced no argument as to which of the "multiple 911 calls" were erroneously admitted, which contained testimonial statements, or what any of the alleged testimonial statements were.

Instead, Bradshaw, merely asserts that the "911 calls *may be* testimonial in nature." (Emphasis added.) Bradshaw does not address how he was harmed by the allegedly erroneous admission of the unspecified 911 calls. And he includes no citations to the record, makes no argument, and provides no supporting legal authority to explain how or why the admission of the "multiple 911 calls," allegedly containing unidentified testimonial statements, was "a contributing factor in the jury's deliberations in arriving at th[e] verdict." *Langham*, 305 S.W.3d at 582.

13

As a result, because Bradshaw has neither identified which 911 calls were erroneously admitted and which statements were testimonial in nature (and thus violative of his Confrontation Clause rights), nor how he was harmed by the allegedly erroneous admission of these unidentified statements, we hold that Bradshaw has waived this issue on appeal. *See* TEX. R. APP. P. 38.1(i).[3]

## B.    Photographs

Next, Bradshaw argues that the trial court erred by admitting State's Exhibit 7, which depicted Welch's body on a stretcher, and State's Exhibit 8, which depicted the gunshot wound to Welch's chest. Bradshaw maintains that these photographs were highly prejudicial and should have been excluded under Rule 403 of the Texas Rule of Evidence.

### 1.    Standard of Review and Applicable Law

The admissibility of a photograph is within the sound discretion of the trial court. *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). Texas Rule

---

[3]    *Cardenas*, 30 S.W.3d at 393 (issue inadequately briefed where appellant failed to address question of whether alleged error was harmless); *Pena v. State*, No. 08-16-00236-CR, 2019 WL 1374152, at *15 (Tex. App.—El Paso Mar. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (appellant waived Confrontation Clause argument on appeal by failing to identify how testimony was testimonial in nature or otherwise violated Confrontation Clause); *Vargas v. State*, No. 06-02-00075-CR, 2003 WL 1338682, at *1 (Tex. App.—Texarkana Mar. 20, 2003, no pet.) (not designated for publication) (appellant inadequately briefed argument that admission of 911 tape violated Confrontation Clause by failing to cite any authority supporting argument or explain how admission of 911 tape actually violated Confrontation Clause).

of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

Photographs and other visual depictions, such as videos, may be inadmissible under Rule 403 when they have an undue tendency to suggest a decision on an emotional basis and the probative value of the photograph or video image is substantially outweighed by such unfair prejudice. *See Newbury v. State*, 135 S.W.3d 22, 43–44 (Tex. Crim. App. 2004). A Rule 403 analysis should include, but is not limited to, the following factors: (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Shuffield*, 189 S.W.3d at 787.

In determining the prejudicial effect of photographs under Rule 403, a court should consider the number of photographs, the size of the photographs, whether the photographs are in color or black and white, the detail shown in the photographs, whether the photographs are gruesome, whether a body shown in the photographs is naked or clothed, and whether the photographed body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment. *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010);

*Shuffield*, 189 S.W.3d at 787. Additionally, we note that crime scene photographs are almost always relevant because they "depict the reality of [the] offense" and may show the manner in which it occurred. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999).

### 2. Analysis

Here, Bradshaw argues that the photographs admitted as State's Exhibits 7 and 8 were highly prejudicial because they were not helpful to the jury on any disputed issue and the State did not need the evidence. According to Bradshaw, the trial court should have should have excluded these exhibits under Rule 403.

The photographs are in color and appear in the record to be letter-sized. State's Exhibit 7 shows Welch, from the chest up, on a stretcher receiving CPR. State's Exhibit 8 shows a close view of Welch's chest, reflecting a gunshot wound. Colin Houston testified that the photographs accurately reflected Welch's condition after he was shot. And they show only the injuries and treatment Welch received and are no more gruesome than would be expected considering Welch's injuries.

We conclude the photographs in question were probative of Welch's injuries and the treatment he received, were necessary for the State in developing its case, and, because they were not overly gruesome, the photographs did not pose the potential of impressing the jury in some irrational way. *See Shuffield*, 189 S.W.3d at 787–88 (rejecting defendant's argument that photographs of victim's body were

unfairly prejudicial because cause of death was not in dispute because photographs were probative of crime scene and injuries received by the victim and were, therefore, necessary for the State's case).

Accordingly, we hold the trial court did not abuse its discretion in admitting these photographs, as the danger of unfair prejudice did not substantially outweigh the probative value of the photographs.

We overrule Bradshaw's third issue.

**Improper Prosecutorial Argument**

In his fourth issue, Bradshaw contends that the prosecutor engaged in improper closing arguments. Specifically, Bradshaw complains about three statements: (1) the prosecutor's statement that Bradshaw refused to speak to the police; (2) the prosecutor's statement that the spent casings moved from the scene of the shooting because they "fly" and "roll"; and (3) the prosecutor's statement that Bradshaw had pointed a gun at Welch on an occasion prior to the murder.

**A.    Improper Comment on Right to Remain Silent**

Bradshaw contends the trial court erred by overruling his objection to the prosecutor's comment during closing argument of the culpability phase of trial on Bradshaw's refusal to give a statement to police. Bradshaw argues the comments violated his Fifth Amendment right against self-incrimination, as well as Article 38.08 of the Texas Code of Criminal Procedure.

17

## 1. Standard of Review and Applicable Law

We review a trial court's rulings on objections as to the proper scope of closing arguments for an abuse of discretion. *See Milton v. State*, 572 S.W.3d 234, 240 (Tex. Crim. App. 2019); *Vasquez v. State*, 484 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2016, no pet.). The general areas of proper jury argument are summation of the evidence, reasonable deductions from the evidence, answer to the arguments of opposing counsel, and pleas for law enforcement. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019). Closing argument is limited to these general areas to ensure that the jury decides the case based on the evidence rather than unsworn assertions of lawyers. *See id.*

Generally, a prosecutor may not comment in closing argument on the defendant's failure to testify, and any such comment violates the Fifth Amendment privilege against self-incrimination, as well as the Texas constitution and statutory law. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. art. 38.08 ("[T]he failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."); *see also Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) (A comment on a defendant's failure to testify violates both the state and federal constitutions as well as Texas statutory law.").

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the

18

comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

Likewise, "[a] comment on a defendant's post-arrest silence violates the Fifth Amendment prohibition against self-incrimination." *Pena v. State*, 554 S.W.3d 242, 251 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). "Such a comment is akin to a comment on the defendant's failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right." *Id.*

But a prosecutor's closing argument referencing the defendant's failure to testify is permissible when it is invited by defense counsel's closing argument. *Quick v. State*, No. 01-09-01127-CR, 2011 WL 286155, at *2 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication); *Zertuche v. State*, 774 S.W.2d 697, 699 (Tex. App.—Corpus Christi 1989, pet. ref'd).

### 2. Analysis

During closing argument, the prosecutor argued:

[Defense counsel] says we had all this opportunity to talk to [Bradshaw]. We had all this opportunity to get all of this stuff. When he got there, he refused to talk to police officers. Detective Williams told you he tried to talk to him, but he wouldn't talk.

19

Bradshaw objected and contended that this statement violated his right against self-incrimination and was improper. At trial and on appeal, the State argues that the statements were not improper because they were made in response to what the defense had argued in closing. The trial court overruled Bradshaw's objection. Although Bradshaw contends this was error, we disagree.

During closing, Bradshaw's counsel argued at length that Bradshaw had been nothing but cooperative with police officers and had provided them with the opportunity to exonerate him:

> [Bradshaw] did not commit this crime. He's been steadfast in his innocence for over 19 months. He offered up his hands. He offered up his DNA. *He offered up himself, turning himself in in order to exonerate him from this crime*.
>
> Every opportunity the government had to exonerate him from this crime has been turned down. Gunshot residue. Nah, it's been longer than 24 hours or just under 24 hours actually when you turned yourself in. We won't check for that. Let's not bother.
>
> DNA, offers up his DNA. Doesn't match to him. Well, there must be a reason, right? There must have been some -- he must not have dropped enough skin cells or something of the other, right?
>
> Photo line-up. In-person line-up. We don't need to do that, right? We've got enough eyewitnesses. We're good.
>
> *Every opportunity for [Bradshaw] to prove he wasn't the right person, the State turned down. Every opportunity*. Think about that.
>
> Turned himself in. There he is, *he's available to the State and no opportunity is taken to prove he is the wrong person*.

(Emphasis added.)

20

We find this case to be very similar to the Supreme Court's decision in *United States v. Robinson*, where the Court held there is no violation of the privilege to remain silent where "the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel." 485 U.S. 25, 32 (1988).

In *Robinson*, the defendant argued during closing argument that the government had, on multiple occasions, denied him the opportunity to explain his actions or his side of the story. 485 U.S. at 27. The prosecutor, in his rebuttal, noted that the defendant's comments that the government had not allowed him an opportunity to explain were inaccurate: "He could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." *Id.* at 28.

The Supreme Court in *Robinson* concluded that the prosecutor's comment "did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case." *Id.* at 32. The *Robinson* Court distinguished instances where the "prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence," which would violate the privilege against self-incrimination,

and those where the reference to the failure to testify "is a fair response to a claim made by defendant or his counsel," which would not violate the privilege. *Id.*

Similar to the statements in *Robinson*, the prosecutor's statements in this case, that Bradshaw refused to talk to police, were in direct response to defense counsel's claim in closing that Bradshaw had done everything he could to cooperate with police and to establish his innocence—but the State had done nothing to investigate whether he was actually guilty. *Id.*[4] Thus, the complained-of statements were invited by defense counsel's own closing argument and did not violate Bradshaw's privilege against self incrimination. As a result, the trial court did not abuse its discretion in overruling Bradshaw's objections to the State's closing argument.

## B. Additional Improper Argument

Bradshaw also asserts that the prosecutor engaged in further improper argument when she stated, "Casings don't drop right exactly where you shoot. They

---

[4]  *See also Aitch v. State*, 879 S.W.2d 167, 175 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (holding prosecutor did not engage in improper jury argument by stating, "I can't walk over to this man's mind, open it up and pull out an intent. I can't call him to the stand," because defense counsel attacked State's evidence of knowledge and intent during closing argument); *Zertuche v. State*, 774 S.W.2d 697, 699 (Tex. App.—Corpus Christi 1989, pet. ref'd) (holding statements by prosecutor that he could not present evidence of defendant's state of mind because defendant exercised his right to remain silent were invited by defense counsel's closing argument that State failed to present evidence of defendant's mental state and, therefore, were not improper comments on defendant's failure to testify).

22

fly. They roll." He further contends the prosecutor's statements that Bradshaw had pointed a gun at Welch on an occasion prior to the murder were improper.

But Bradshaw failed to object in the trial court to either statement made by the prosecutor. Generally, in order to preserve an argument for appeal, a defendant must make an objection and obtain a ruling on that objection from the trial court. *See* TEX. R. APP. P. 33.1(a).

With regard to the argument that the casings "fly" and "roll," Bradshaw acknowledges his failure to object, but argues that due to the "highly prejudicial" nature of the prosecutor's statements, this error amounts to prosecutorial misconduct and a due process violation which does not require a contemporaneous objection. Citing to the Texas Court of Criminal Appeals' opinions in *Marin v. State* and *Grado v. State*, which discussed Rule 33.1's preservation requirement in the context of the nature of the right infringed, Bradshaw appears to argue that this improper jury argument falls into the category of "absolute rights," which cannot be forfeited and to which Rule 33.1's preservation requirements do not apply. *See Grado v. State*, 445 S.W.3d 736, 738–39 (Tex. Crim. App. 2014); *Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). Neither *Marin* nor *Grado* addressed the specific issue here—whether an issue related to improper jury argument is forfeitable, and must be preserved, or is absolute.

23

The Texas Court of Criminal Appeals has, however, directly addressed this issue in *Hernandez v. State*, 538 S.W.3d 619 (Tex. Crim. App. 2018). There, the Court held that "[t]he right to a trial untainted by improper jury argument is forfeitable" and that, in order to preserve a complaint on appeal to erroneous jury argument, the defendant must object and pursue his objection to an adverse ruling. *Id.* at 622. If he fails to do so, "he forfeits his right to complain on appeal about the argument." *Id.*

The *Hernandez* Court went further to conclude that even inflammatory jury argument—argument that was so egregious that an instruction to disregard would be ineffectual—is forfeited if the defendant does not object and pursue that objection to an adverse ruling. *Id.* at 622–23. It therefore rejected the defendant's argument that error preservation was not required due to the egregious nature of the prosecutor's statement and explicitly declined to "elevate the right to be free of improper jury argument to the status of an absolute requirement like jurisdiction." *Id.* at 623 (citing *Marin*, 851 S.W.2d at 279).

Here, Bradshaw did not object to the prosecutor's statement that bullet casings "fly" and "roll." Neither did Bradshaw object to the prosecutor's statement that Bradshaw previously had pulled a gun on Welch. Because "[t]he right to a trial untainted by improper jury argument is forfeitable," this failure to object precludes

Bradshaw from complaining about these aspects of the State's closing argument on appeal. *Hernandez*, 538 S.W.3d at 622–23.

We also overrule Bradshaw's fourth issue.

## Conclusion

We thus affirm the trial court's judgment.

Terry Adams
Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.

Do not publish. TEX. R. APP. P. 47.2(b).