Opinion issued June 7, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00814-CR

———————————

## WILBERTO ARRELLANO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 339th District Court
### Harris County, Texas
### Trial Court Case No. 1353257

---

## O P I N I O N

A jury convicted Appellant Wilberto Arrellano of murder, and it assessed punishment at life in prison. *See* TEX. PENAL CODE § 19.02. Arrellano filed a motion for new trial which was overruled by operation of law. He brings four issues on appeal. He argues that the evidence was insufficient to support his

conviction. He also contends that the trial court erred by denying his request for a jury instruction on eyewitness testimony, incorrectly instructing the jury on reasonable doubt, and failing to hold a hearing on his motion for new trial.

We affirm. The evidence allowed a rational trier of fact to find Arrellano guilty beyond a reasonable doubt, and no reversible error by the trial court has been shown.

## Background

Complainant Eduviel Zarco-Ramirez went out with friends, including his roommate Rafael Pineda, his brother-in-law Juan Estrada Gonzalez, and Juan's brother Apolonio. Arriving at a seafood restaurant at approximately 1:00 A.M., they ordered food and beer. Another group of men and women was seated at a nearby table. Zarco-Ramirez sang karaoke as his friends sang along from their table. As he stepped off of the karaoke stage, a man approached Zarco-Ramirez from behind and shot him in the head, killing him.

Approximately four months later, after viewing several photo arrays, Apolonio identified the appellant, Wilberto Arrellano, as the person who shot Zarco-Ramirez. Arrellano was arrested and charged with murder. Juan and Rafael also subsequently identified Arrellano from photo arrays as the shooter.

The case was tried to a jury, before a visiting judge. The State called several witnesses, including four police officers involved in the investigation, an assistant medical examiner, and Zarco-Ramirez's companions the night of the murder.

Apolonio testified that he was preparing to eat an oyster when he heard a gunshot. He looked up and saw Zarco-Ramirez falling to the ground and a person holding a gun. He stated that he was about 13 feet from the person holding the gun, and that he could see him clearly. He described the person as wearing a short-sleeved green shirt with stripes. In court, he identified Arrellano as the person he saw holding the gun. Apolonio further testified that, after the shooting, Arrellano pointed the gun at the rest of Zarco-Ramirez's group, and he then left the restaurant with his own group. Apolonio stated that there was no interaction between Arrellano's group and Zarco-Ramirez's group prior to the shooting, and he had not seen anyone else at the restaurant with a weapon. Approximately four months after the shooting, Apolonio picked Arrellano from a photo array and identified him as the shooter. At trial, he testified that when the officer who showed him the photo array asked how confident he was in the identification of Arrellano, he "was like 50/50."

Juan testified that on the night of the shooting, Arrellano was sitting at a nearby table with a group of men, women, and children. He saw Arrellano twice before the shooting. He did not recall any interaction between the people at his

3

table and Arrellano's group while at the restaurant. According to Juan, Arrellano left the restaurant at some point, and later he suddenly "burst in" to shoot Zarco-Ramirez in the head from behind. Juan testified that he was about ten feet away from the shooter and could see him clearly. He identified Arrellano in court as the man who shot Zarco-Ramirez.

Rafael testified that his group was at the restaurant for "about 15 minutes" before Zarco-Ramirez was shot. He stated that the shooter was wearing blue pants, and a shirt that was "somewhat blue, with some white lines." In court, he identified Arrellano as the shooter, and stated that he had a weapon that looked like a "nine gun." He also recalled that Arrellano was at a nearby table with men, women, and a child. Rafael remembered that his friend asked one of the women at Arrellano's table if she wanted to dance. One of Arrellano's friends responded by telling Apolonio that he would "come and kill him in front of [his] friends" for disrespecting him. Rafael testified that Zarco-Ramirez had been singing karaoke, and when he left the stage, Arrellano "came from behind and shot him in the head." When asked about his earlier photo array, he stated that the officer had told him the shooter would be in the photo array, and that he was "100%" confident in his identification of Arrellano.

4

The assistant medical examiner testified that she performed an autopsy on Zarco-Ramirez's body. Based on her examination, she determined that Zarco-Ramirez was killed by a single close-range gunshot wound to the head.

The State rested its case, and the defense called three witnesses, including two police officers and a waitress who was working at the restaurant when Zarco-Ramirez was killed.

The waitress testified that she waited on the table next to Zarco-Ramirez's group. She recalled that there was a baby at the table, but she could not remember who else was at the table, "just the ones that were ordering beverages." She did not remember seeing Arrellano there.

Detective J. Sosa was called as a witness by both the State and by Arrellano. Sosa and his partner were assigned to the murder investigation. He testified that in a recorded statement given the night of the shooting, Rafael mentioned hearing a threat the night of the shooting. However, in a statement taken by Sosa approximately one week after the shooting, Rafael stated that he did not remember anyone making any threats. Sosa also testified that the witnesses were "pretty much" consistent in their accounts of "what they saw and how many people were involved, who possibly had a gun, the vehicles that were there."

At the close of evidence, Arrellano submitted a proposed jury-charge instruction on eyewitness identification. The court refused to include the proposed instruction.

The jury found Arrellano guilty of murder and sentenced him to life in prison. Arrellano filed a motion for a new trial based upon claims of newly discovered evidence and insufficiency of the trial evidence to support his conviction. The motion requested a hearing. Arrellano later filed a separate request for a hearing on the motion for new trial. He then sent a certified letter to the presiding judge of the 339th District Court (not the visiting judge who presided over the trial), enclosing the motion and the separate request for a hearing. A hearing on the motion was never set and the motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c).

Arrellano appealed.

## Analysis

### I.    Sufficiency of the evidence

Arrellano challenges the sufficiency of the evidence to support his murder conviction. He contends that numerous inconsistencies among the accounts and testimony of the complainant's companions, Apolonio, Juan, and Rafael, create reasonable doubt as to his guilt.

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In a legal sufficiency review we consider all of the evidence in the light most favorable to the verdict, and we decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The evidence may be circumstantial or direct, and juries may draw multiple reasonable inferences from the evidence presented at trial. *Hooper v. State,* 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012). A jury may believe or disbelieve some or all of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). The testimony of a single eyewitness can be sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We presume that the jury resolved any conflicting inferences in favor of the verdict, and we defer to that determination. *Merritt*, 368 S.W.3d at 525–26.

Arrellano argues that the evidence was insufficient to support his conviction due to inconsistencies in witness testimony as well as inconsistencies between previous accounts given by eyewitnesses compared to their trial testimony. He contends that Apolonio's failure to see the actual shooting and the amount of time he saw the shooter established reasonable doubt as to the reliability of his identification.

Although Arrellano's brief identifies several inconsistencies in the accounts of Apolonio, Juan, and Rafael, including whether there was any interaction between the two groups prior to the shooting, how the shooter was dressed, and the number of individuals who had a weapon the morning of the shooting, this circumstance does not render the evidence legally insufficient. *See Davis*, 177 S.W.3d at 359. We presume that the jury weighed the evidence and resolved any inconsistencies in favor of the verdict. *Merritt*, 368 S.W.3d at 525–26.

Arrellano also contends that the lack of DNA, fingerprint, or video evidence further establishes the insufficiency of the evidence to support his conviction. However, the State was not required to present such evidence to meet its burden of proof. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and

8

commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2). The assistant medical examiner testified that Zarco-Ramirez was killed by a gunshot wound to the head. Three eyewitnesses identified Arrellano in a photo array, and in court, as the person who shot Zarco-Ramirez. Apolonio stated that he saw Arrellano with the gun immediately after he heard a gunshot, and both Juan and Rafael testified that they saw Arrellano shoot Zarco-Ramirez in the head.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that Arrellano shot and killed Zarco-Ramirez. We overrule Arrellano's challenge to the sufficiency of the evidence.

## II. Voir dire comment about reasonable doubt

Arrellano argues that the trial court made an improper comment on the meaning of "reasonable doubt" during voir dire. He complains of the following comment the trial judge made to the jury panel during voir dire:

> You're not going to be given a legal definition of beyond a reasonable doubt. Beyond and reasonable and doubt are words that have a commonly understood meaning in the English language and, so, therefore, you're not given a legal definition. Now, you don't get to just make up your definition. You don't get to just say, well, this is what I think reasonable means. It has to be what is the definition of reasonable. It's beyond a reasonable doubt. That is the standard of proof.

9

Arrellano concedes that he did not object to the trial judge's comment. In light of the recent opinion in *Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017), this court requested supplemental briefing on the error-preservation rules applicable to this issue.

"As a prerequisite to presenting a complaint for appellate review, the record must show" that "the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A).

In *Proenza*, the appellant asserted that certain remarks of the trial judge while examining a witness constituted an improper comment on the weight of the evidence in violation of article 38.05 of the Code of Criminal Procedure. 541 S.W.3d at 790. The appellant did not object to the trial court's remarks, but he argued that his complaint nevertheless could be entertained for the first time on appeal. The Court of Criminal Appeals held that, in determining the preservation requirements for a particular issue, we consider the nature of the right allegedly infringed upon, rather than the particular circumstances of the case at hand. *Id.* at 796 (citing *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014), and *Ex parte Heilman*, 456 S.W.3d 159, 165–66 (Tex. Crim. App. 2015)). The Court

reiterated the three categories of rights previously set out in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), each of which require the application of different error-preservation rules: (1) absolute requirements and prohibitions, implementation of which is not optional and cannot be waived or forfeited by either party (e.g., jurisdictional rules); (2) rights of litigants which must be implemented by the system unless expressly waived, described as rights which are "so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection," and thus must be expressly waived by the defendant (e.g., right to assistance of counsel, right to a jury trial); and (3) rights of litigants which are to be implemented upon request, or are otherwise forfeited. *Proenza*, 541 S.W.3d at 792; *Marin*, 851 S.W.2d at 278–79. Procedural default—meaning forfeiture absent a timely objection—applies only to category-three rights. *Proenza*, 541 S.W.3d at 792.

The Court held that the issue of where an article 38.05 error fits within the *Marin* framework "turns upon whether the trial judge has an independent duty to ensure compliance with Article 38.05." *Id.* at 797. Pointing to the language of the statute, which the Court noted is both "couched in mandatory terms" and directed specifically to the trial judge, it concluded that responsibility of compliance with the law is placed "squarely upon the judge." *Id.* at 798. The Court also noted that, although it is incumbent upon litigants to urge their rights at trial "because they can

11

trust the trial judge to fairly consider the claims and reach a ruling that is based in law," claims of improper judicial comment under article 38.05 may bring into question the impartiality of the trial judge. *Id.* at 799. Thus, it held that "claims of improper judicial comments raised under Article 38.05" do not fall within *Marin's* category-three forfeitable rights, rather "the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right." *Id.* at 801. The Court thus held the appellant was entitled to appellate review of his claim. *Id*.

Arrellano argues that the issue in this case "is not materially different from the *Proenza* case because it did undermine the burden of proof for the defense." However, the Court in *Proenza* analyzed a complaint about a judge's improper comment on evidence, as prohibited by article 38.05. In contrast, Arrellano's complaint is not based on an assertion that the trial judge's comment was improper under article 38.05. Instead, he argues that the trial court's comment incorrectly instructed the jury panel on the definition of reasonable doubt. His complaint thus concerns a statement of law, rather than a comment on the weight of evidence.

In contrast to the Court's reasoning in *Proenza*, Arrellano does not assert that the judge's comment challenged in this case raises an issue concerning judicial impartiality, nor does he rely upon any statutory basis to argue that the trial judge

12

had an independent duty to take, or to refrain from, some particular action. *See Proenza*, 541 S.W.3d at 797.

Other than asserting unconvincing similarities to *Proenza*, Arrellano fails to put forth an argument that some particular systemic requirement or waivable-only right was at stake and a trial objection therefore was not required. Because the error-preservation issue is inadequately briefed, despite our invitation for a supplemental brief, this issue has been waived. TEX. R. APP. P. 33.1(a)(1)(A), 38.1(i); *see also Proenza*, 541 S.W.3d at 797 ("A court of appeals should not find error in a trial judge's inaction when contemporaneous action is neither requested nor independently required of her."); *Gallo v. State*, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007) (appellant waived issue for review by failing to adequately brief why his unpreserved complaint should be heard for the first time on appeal). We overrule Arrellano's appellate challenge to the trial judge's comments during voir dire.

## III.    Proposed jury instruction on eyewitness testimony

Arrellano contends that the trial court erred by denying his proposed jury instruction on eyewitness testimony. The proposed instruction would have advised the jury that, in addition to other instructions in the charge related to the credibility of witnesses, it was also permitted to consider eight factors in evaluating eyewitness testimony:

1. The capacity and opportunity of the eyewitness to observe the offender based upon the length of time for observation and the conditions at the time of observation, including lighting and distance

2. Whether the identification was the product of the eyewitness's own recollection or was the result of influence or suggestiveness

3. The circumstances under which the defendant was presented to the eyewitness for identification

4. Any inconsistent identifications made by the eyewitness

5. Any instance in which the eyewitness did not make an identification when given the opportunity to do so

6. The witness's familiarity with the subject identified

7. Lapses of time between the event and the identification[s]

. . . .

9. The totality of circumstances surrounding the eyewitness's identification.

Arrellano argued that the charge should have included his proposed instruction because "it merely emphasizes the weight of the credibility given," and "instructs the jury areas that they may or may not consider."

The jury has the responsibility to judge the credibility of witnesses and the weight to be given to any other evidence. *Merritt*, 368 S.W.3d at 525. A jury charge should not express any opinion concerning the weight of evidence, TEX. CODE. CRIM. PROC. art. 36.14, nor should it single out a specific type of evidence

14

and invite the jury to pay particular attention to it. *See Brown v. State*, 122 S.W.3d 794, 800-01 (Tex. Crim. App. 2003).

The jury charge in this case included the following instruction: "You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby." Arrellano's proposed instruction focused on eyewitness identification and listed eight factors which the jury could consider, in addition to the instruction already provided by the court, in evaluating eyewitness identification testimony.

Arrellano concedes that his proposed instruction would be an impermissible comment on the weight of evidence under existing case law. *See, e.g.*, *Moore v. State*, 700 S.W.2d 193, 206 (Tex. Crim. App. 1985). He nevertheless argues that his proposed instruction is necessary. He quotes several sources not included in the appellate record to suggest the unreliability of eyewitness testimony, including a quote attributed to astrophysicist Neil Degrasse Tyson: "Eyewitness testimony is the highest form of evidence in the law, which is sad, because it is the lowest form of evidence in science." Arrellano relies upon decisions from foreign jurisdictions

for the proposition that other states have concluded instructions on the reliability of witness identification "are necessary."*

Notwithstanding Arrellano's assertion that he was harmed by the trial court's refusal to include his proposed instruction suggesting the unreliability of eyewitness testimony, controlling Texas case law deems the instruction impermissible. *See Moore*, 700 S.W.2d at 206. In a recent unpublished opinion, the Court of Criminal Appeals again applied its precedents to hold that it is impermissible for a charge to instruct jurors to consider particular factors in its evaluation of eyewitness testimony is impermissible. *Suniga v. State*, No. AP-77,041, 2017 WL 431904, at *38–40 (Tex. Crim. App. Feb. 1, 2017) (not designated for publication).

---

\*     Arrellano relies on the following opinions from foreign jurisdictions: *Brooks v. Alabama*, 380 So. 2d 1012, 1014 (Ala. Crim. App. 1980); *California v. Wright*, 45 Cal. 3d 1126, 1149 (1988); *State v. Cabagbag*, 277 P.3d 1027, 1038–39 (Hawai'i 2012); *Kansas v. Warren*, 635 P.2d 1236, 1244 (Kan. 1981); *Massachusetts v. Rodriguez*, 391 N.E.2d 889, 892–93 (Mass. 1979); *Minnesota v. Ferguson*, 804 N.W.2d 586, 609–10 (Minn. 2011); *New Jersey v. Henderson*, 27 A.3d 872, 923–24 (N.J. 2011); *People v. Radcliffe*, 196 Misc. 2d 381, 387–89 (N.Y. Sup. Ct. 2003); *State v. Long*, 721 P.2d 483, 487 (Utah 1986)). Among this litany of decisions from other states, Arrellano also relies on *Perry v. New Hampshire*, 565 U.S. 228, 232–33, 132 S. Ct. 716, 720–21 (2010), as purported authority that "[j]ury instructions on infallibility of eyewitness testimony are crucial to protect defendants." The referenced part of Justice Ginsburg's opinion is concerned with allegations of improper police influence on witness identifications arising from improperly suggestive circumstances arranged by law enforcement officers—a circumstance not argued in this appeal. 565 U.S. at 232–33, 132 S. Ct. at 720–21. *Perry* also confirms that "admission of evidence in state trials is ordinarily governed by state law." *Id*. at 231, 132 S. Ct. at 720.

16

Because Arrellano's proposed instruction impermissibly singled out a particular type of evidence and commented on how the evidence should be weighed, the trial court correctly refused to submit it. We overrule Arrellano's objection to the trial court's refusal to give the requested jury instruction.

## IV. Motion for new trial

Arrellano claims that the trial court erred by failing to conduct a hearing on his motion for new trial because the motion and affidavit included evidence from a new witness who could have been "instrumental" in the trial. The State argues that Arrellano failed to timely present the motion to the trial court, and therefore he was not entitled to a hearing on the motion.

A defendant has a right to a hearing on a motion for new trial when the motion raises matters not determinable from the record, upon which he could be entitled to relief. *Rozell v. State,* 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). However, that right is not absolute. *Id*.; *Bearnth v. State*, 361 S.W.3d 135, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In addition to timely filing the motion for new trial, the defendant also must present the motion to the trial court within ten days of filing. *Bearnth*, 361 S.W.3d at 145; TEX. R. APP. P. 21.6. The trial court is not required to hold a hearing on the motion if it has not been timely presented. *Bearnth*, 361 S.W.3d at 145. A failure to present the motion for new

17

trial to the trial court constitutes a failure to preserve for appellate review any error in the trial court's failure to hold a hearing. *Rozell*, 176 S.W.3d at 230–31.

Presentment requires the defendant to go beyond simply filing the motion for new trial with the trial court clerk. *Bearnth*, 361 S.W.3d at 145. The presentment must result in actual notice to the trial court of defendant's desire for a ruling or a hearing on the motion. *Id*. Proof of presentment must be apparent from the record. *See id*. at 146. Presentment may be evidenced by the judge's signature or notation on the proposed order, an entry on the docket sheet indicating presentment or setting a hearing date, or other proof that the trial court was actually aware of defendant's request for a ruling or hearing on the motion. *Id*.; *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).

Arrellano timely filed his motion for new trial. The motion included a request for a hearing on the motion. Eight days after filing the motion, Arrellano also filed a separate request for a hearing on the motion for new trial. These filings were recorded by docket-sheet entries stating "MOTION FILED: DEF NEW TR" and "MOTION FILED: DEF REQ HRG NEW TRL," respectively. Arrellano sent a certified letter enclosing the motion and the separate request for a hearing to the court clerk and to the presiding judge of 339th District Court. The docket sheet does not indicate that a hearing date was ever set or that there was any ruling on the motion. Arrellano's proposed order on the motion for new trial did not set a

date for hearing, and it does not bear any judge's signature or any other written notation from either the presiding judge of 339th District Court or the visiting judge who presided over the trial.

This record does not demonstrate that the trial court had actual notice of Arrellano's desire for a hearing on the motion. *See Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.) (holding that statement in motion for new trial titled "Certificate of Presentment" and docket entry noting the date the motion was filed were insufficient to establish presentment); *see also Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding that document in record titled "Notice of Presentment of Motion for New Trial" was insufficient to show presentment). Accordingly, the record does not demonstrate that Arrellano's motion for new trial was timely presented, and any error in the trial court's failure to hold a hearing on the motion has not been preserved for appeal.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Publish. TEX. R. APP. P. 47.2(b).

19