**Opinion issued December 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00140-CR
_____

**DAMIEN DOUGLAS HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 428th District Court**
**Hays County, Texas[1]**
**Trial Court Case No. CR-17-0781-D**

---

[1] The Texas Supreme Court transferred this appeal to this Court from the Court of Appeals for the Third District of Texas, pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer."). We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## OPINION ON EN BANC RECONSIDERATION

The State of Texas has filed a motion for en banc reconsideration of our May 26, 2022 opinion and judgment. *See* TEX. R. APP. P. 49.7. A majority of the Court has voted to grant en banc reconsideration. We withdraw our opinion of May 26, 2022, vacate our judgment of the same date, and issue this en banc opinion and judgment in their stead.

A jury convicted appellant, Damian Harris, of murder[2] and assessed his punishment at 20 years' confinement. In three issues, appellant argues that (1) the evidence is legally insufficient to support his murder conviction because the State failed to prove beyond a reasonable doubt that he did not act in self-defense, (2) the trial court abused its discretion in denying his motion for new trial, and (3) the trial court erred in failing to provide an adequate response to a jury note asking whether the admitted commission of a crime negates the basis for a self-defense claim and instead referring the jury to the court's charge. We affirm.

## Background

This is a murder case arising from a drug-related shooting. One evening in February 2017, officers received a dispatch for shots fired at an apartment complex in San Marcos, Texas. When they arrived, they found a deceased male, later identified as Terrance Valentine, inside one of the apartments, dead from a single

---

[2]    *See* TEX. PENAL CODE § 19.02(b).

2

gunshot wound to the back of the head. Witnesses told the officers that Valentine and another male, later identified as appellant, had gotten into an argument during a drug deal, which escalated and ultimately ended with appellant pulling a handgun and shooting Valentine in the head.

Appellant was indicted for murder. The indictment alleged that appellant caused Valentine's death by shooting him with a firearm. Appellant entered a plea of not guilty, claiming that he had acted in self-defense. At trial, the State presented numerous witnesses and exhibits. Viewed in the light most favorable to the jury's verdict, the evidence established the following:

In January 2017, Valentine arranged a drug deal with Devin Bethea through an intermediary, Ty-Zay Wilson. Wilson knew both Bethea and Valentine and put them in contact with one another after Bethea informed Wilson that he wanted to sell prescription-grade cough syrup.[3] Through text messaging, Bethea and Valentine negotiated the price, amount, and location, agreeing to meet at Wilson's apartment in San Marcos.

On the night of the scheduled drug deal, Valentine drove to the apartment with his friend, Joseph Massey, while Bethea drove to the apartment with appellant.

---

[3]     Such codeine-based cough syrup is used to make the recreational drug beverage "lean" or "purple drank."

3

Valentine and Massey arrived first and went upstairs to Wilson's bedroom to play videogames while they waited for Bethea and appellant. While waiting upstairs, Valentine told Wilson that he was armed with a handgun, that he intended to pay for the drugs with counterfeit bills, and that if Bethea and appellant tried to "rob" him, he would just "take" the drugs from them. Wilson never warned Bethea or appellant about what Valentine had told him while waiting upstairs, and there is no evidence either of them knew that Valentine was armed and prepared to "take" the drugs from them.

When Bethea and appellant arrived, they entered the apartment with appellant carrying a box purportedly containing the drugs. Massey and Valentine came downstairs, and Valentine gave Bethea and appellant the counterfeit bills. Bethea and appellant counted it at the kitchen island while Valentine moved around to the back of a couch near the front door; Massey and Wilson stayed in the kitchen.

When Bethea and appellant finished counting the money, appellant, perhaps realizing that the money was fake, said Valentine was short, packed up the drugs, and started to leave. But, before appellant could reach the front door, Valentine intercepted him, grabbed the front of his shirt, and pushed him against the wall. Appellant then drew a gun from his waistband, and, as Valentine turned, possibly reaching for his own gun, appellant shot him in the back of the head, immediately

4

killing him. Valentine's gun discharged a round into the floor that ricocheted into the couch leg.

Massey ran upstairs into Wilson's bedroom, and Wilson fled out the back door. Appellant and Bethea fled the scene as well.

Wilson never returned that night, but Massey eventually came back downstairs and found Valentine facedown near the door with a pool of blood around his head. Massey found Valentine's gun near his body, picked it up, and hid it behind the apartment's HVAC unit. He then hid the counterfeit bills under Wilson's mattress and called 911.

At the close of evidence, the trial court submitted a charge containing standard statutory instructions on appellant's claim of self-defense. The jury rejected appellant's self-defense claim, found him guilty of murder, and assessed punishment at 20 years' confinement. The trial court entered a judgment of conviction in accordance with the jury's verdict.

This appeal followed.

## Legal Sufficiency

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction for murder because the State failed to prove beyond a reasonable doubt that appellant did not act in self-defense. The State responds that appellant's argument applies an erroneous standard of review that views the

evidence in the light most favorable to his claim of self-defense and that, properly viewed in the light most favorable of the verdict, the evidence proves beyond a reasonable doubt that appellant did not act in self-defense.

## A.    Applicable law and standard of review

Under the Penal Code, as relevant here, a person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2). It is a defense to prosecution for murder that the person's use of deadly force was "justified." *Id.* §§ 9.02; 9.31–9.32; *see Braughton v. State*, 522 S.W.3d 714, 730 (Tex. App.—Houston [1st Dist.] 2017) (providing that deadly force used in self-defense may be raised as justification for defendant's actions and in support of acquittal against murder charge), *aff'd*, 569 S.W.3d 592 (Tex. Crim. App. 2018). A person's use of deadly force is justified if, among other things, the person "reasonably believes the deadly force is immediately necessary" to protect himself "against the other's use or attempted use of unlawful deadly force." PENAL § 9.32(a)(2)(A).

In a claim of self-defense justifying a defendant's use of deadly force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised

issues. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Id.* In contrast, the State's burden of persuasion is not one that requires the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Id.* Thus, in reviewing the sufficiency of the evidence to support a conviction for murder when the jury has rejected a defendant's claim of self-defense, we determine whether, after viewing all of the evidence in the light most favorable to the verdict, any rational jury would have found the essential elements of murder beyond a reasonable doubt and also would have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id.* at 609.

## B. Analysis

It is undisputed that the evidence presented at trial established the following facts: On the night of the shooting, both appellant and Valentine arrived at Wilson's apartment armed with handguns for a drug deal in which appellant was going to sell Valentine prescription-grade cough syrup at an agreed amount and price. Valentine attempted to purchase the drugs with counterfeit money. Appellant counted the money, said it was short, packed up the drugs, and began leaving the apartment. But, before appellant could reach the apartment's front door, Valentine intercepted him, grabbed the front of his shirt, and pushed him against the wall,

thereby preventing appellant from leaving. Appellant then drew his gun from his waistband, and, as Valentine turned, possibly reaching for his own gun, appellant shot him in the back of the head, immediately incapacitating him. At some point, Valentine's firearm discharged as well (though exactly when and how are in dispute), with the round ricocheting off the ground into one of the legs of the couch.

Despite these undisputed facts, appellant, relying on four pieces of evidence, argues that the evidence is legally insufficient to support the jury's rejection of his self-defense claim. We consider the evidence appellant claims proves self-defense.

### 1.    Evidence that Valentine was armed and prepared to use force

First, appellant contends that the evidence shows that Valentine was armed with a handgun and prepared to take the drugs by force, which, in turn, shows that appellant reasonably believed that Valentine might use or attempt to use unlawful deadly force against him. In support of his contention, appellant cites to Wilson's testimony recounting what Valentine told him before Bethea and appellant arrived at the apartment, specifically, that he was armed, intended on buying the drugs with counterfeit money, and was prepared to "just take" the drugs if appellant and Bethea tried to "rob" him.

But, appellant does not cite to any testimony or other evidence showing that appellant *knew* what Valentine told Wilson before he and Bethea arrived. Wilson

8

testified that he told neither Bethea nor appellant that Valentine was armed and prepared to take the drugs by force. And, nothing in the record indicates that appellant was otherwise aware or suspected that Valentine might use deadly force during the drug deal.

A rational jury could have found that, when appellant drew and fired his gun, he did not reasonably believe that the use of deadly force was immediately necessary to protect himself against Valentine's use or attempted use of his firearm or other deadly force. Assuming that appellant was aware that Valentine was armed and prepared to take the drugs by force, a rational jury could have found that appellant's knowledge of these facts did not support a reasonable belief that deadly force was immediately necessary at the time of the shooting, as Valentine had not yet drawn his gun or otherwise threatened to use it at that time.

### 2.    Evidence that Valentine was large

Second, appellant contends that the evidence shows that Valentine was a large, imposing individual,[4] which, in turn, supports a finding that appellant reasonably believed that deadly force was immediately necessary when Valentine pushed appellant against the wall. Valentine's large physical stature does not compel—and does not even necessarily support—a finding that appellant reasonably believed deadly force was immediately necessary to protect himself

---

[4]    Wilson's testified that Valentine was roughly six feet tall and almost 300 pounds.

from Valentine, especially considering that appellant was armed. Whether Valentine's size justified a reasonable belief that deadly force was immediately necessary was a question for the jury—a question the jury resolved in favor of the State, not appellant.

### 3.    Evidence that Valentine shot first

Third, appellant contends that the evidence conclusively proves that Valentine shot first, which, in turn, supports a finding that appellant fired his handgun (i.e., used deadly force) in justified self-defense. Appellant argues that the evidence conclusively proves that Valentine shot first because the evidence also conclusively proves two additional facts: (1) Valentine's gun could not have discharged without Valentine consciously pulling the trigger; and (2) Valentine was immediately incapacitated when shot in the head.

Appellant contends that the first fact is conclusively proved by the testimony of a tool-mark analyst, who testified that he tested Valentine's gun's trigger mechanism and concluded that it would not have discharged without five pounds of force being applied to the trigger. Appellant contends that the second fact is conclusively proved by the testimony of the medical examiner, who testified that Valentine's head wound would have immediately incapacitated him and thereby prevented him from deliberately discharging his firearm.

However, appellant's contention ignores additional testimony from the analyst and examiner, as well as testimony from Wilson and Massey, which supports the opposite conclusion: that Valentine's trigger pull was an involuntary jerking produced by his being shot in the head as he was attempting to draw his own gun after seeing appellant reach for his.

The medical examiner testified that Valentine's incapacitating injury made voluntary movement "unlikely." But, she explained that an incapacitating head injury can cause involuntary movement, such as the clinching of a fist. While she could not say for sure what happened in appellant's case, her testimony, viewed in the light most favorable to the verdict, supports a finding that Valentine involuntarily discharged his firearm after being shot in the head by appellant.

A finding that Valentine involuntarily discharged his firearm after being shot is supported by three additional pieces of evidence:

- the testimony of Massey, who testified that he saw appellant draw his firearm first;

- the autopsy, which showed that Valentine was shot in the back-left side of his head; and

- the ballistics examination, which showed that when Valentine's firearm was discharged, it was aimed down and away from appellant.

This evidence supports a finding that Valentine, in response to seeing appellant draw his gun, turned and attempted to pull his own gun out of his

waistband and then involuntarily discharged it when appellant shot him in the back of the head.

Appellant contends that Wilson's testimony supports a finding that Valentine drew and fired his gun first. To the extent Wilson's testimony may be characterized as supporting such a finding—at times Wilson equivocated, describing appellant and Valentine as drawing their guns simultaneously—we assume that the jury disregarded the testimony and credited instead the evidence supporting a finding that appellant drew and fired his gun first.

**4.    Evidence that the jury accepted appellant's self-defense claim**

Fourth, appellant contends that a note submitted by the jury during deliberations and post-trial affidavits filed by his attorneys show that the jury considered his self-defense claim to be valid. We disagree for two reasons.

First, neither the jury's note nor the post-trial affidavits are relevant to our sufficiency review. In reviewing the sufficiency of the evidence, an appellate court considers only the evidence put before the jury and cannot consider any evidence presented after the verdict. *See Marines v. State*, 292 S.W.3d 103, 106 n.1 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("The scope of a legal sufficiency review is also limited to only that evidence before the jury."). Thus, in reviewing the sufficiency of the evidence here, we cannot consider the jury's note or the post-trial affidavits, as neither piece of evidence was presented to the jury.

Second, the affidavits filed by appellant's lawyers are inadmissible. The affidavits are hearsay, as they recount what certain jurors allegedly told appellant's lawyers about their deliberations. *See* Tex. R. Evid. 802. And, the affidavits are incompetent because jurors are prohibited from testifying about their deliberations. Tex. R. Evid. 606(b)(1).

Viewing the evidence in the light most favorable to the verdict, any rational jury could have reasonably found that Appellant—engaged in a drug deal and confronted with non-deadly force—drew his gun and fired without justification, shooting Valentine in the back of the head and thereby causing his death. Accordingly, we overrule appellant's first issue.

## Motion for New Trial

In his second issue, appellant contends that the trial court abused its discretion in denying his motion for new trial by operation of law. *See* Tex. R. App. P. 21.8(a). The State responds that appellant failed to preserve the issue for our review because he never presented the motion to the trial court. We agree.

Under the Rules of Appellate Procedure, a criminal defendant must timely "present" a motion for new trial to the trial court. Tex. R. App. P. 21.6. If the defendant fails to timely present the motion, the issues raised in the motion are not preserved for appellate review. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). To prove presentment, the record must show that the trial court had

actual notice of the defendant's "desire for a ruling or a hearing on the motion." *Arrellano v. State*, 555 S.W.3d 647, 655 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

But here, the record contains no notice of hearing, docket sheet entry setting a hearing date, order resetting or denying the motion, "or other proof that the trial court was actually aware of [appellant]'s request for a ruling or hearing on the motion." *Id.* Instead, the record only contains a file-stamped copy of appellant's motion and an email notifying the State that the motion had been filed. In other words, the record merely shows that appellant's motion was timely filed, which is insufficient to show that the motion was timely presented. *See Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) ("Merely filing the motion is not sufficient alone to show presentment."); *Arrellano*, 555 S.W.3d at 655 ("Presentment requires the defendant to go beyond simply filing the motion for new trial with the trial court clerk."); *Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("To prove presentment, the record must contain more than just proof that the motion was timely filed[.]").

We hold that the record fails to show that appellant timely presented his motion for new trial to the trial court, and that, as a result, appellant has failed to preserve for appellate review the denial of his motion by operation of law. Accordingly, we overrule appellant's second issue.

## Jury Question

In issue four, appellant contends that "[t]he trial court erred by failing to provide an adequate response To The Question Presented By The Jury During Guilt/Innocence Deliberations."

### A.    Background

At trial, appellant claimed that he acted in self-defense, which permits a person's use of deadly force if the actor reasonably believes the force used was immediately necessary to protect the person against the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE §§ 9.31–.32. The defense provides that, under certain circumstances, the defendant is entitled to a presumption that deadly force was immediately necessary. *See id.* § 9.32(b). That presumption is not available to a defendant "engaged in criminal activity," other than certain misdemeanor traffic offenses, at the time the deadly force is used. *Id.* at § 9.32(b)(3).

Because appellant produced some evidence in support his use of deadly force in self-defense, the trial court submitted a self-defense charge to the jury, which included (1) definitions of the relevant statutes, (2) the burden of proof for self-defense, (3) relevant statutory definitions, (4) law of the issue of retreat, and (5) the presumption that deadly force is necessary under certain circumstances. In

particular, the presumption-of-reasonableness instruction,[5] which tracked text the language of Penal Code section 9.32(b) of the Texas Penal Code, stated:

> An actor's belief that deadly force was immediately necessary is presumed to be reasonable if:
>
> > 1. the actor knew or had reason to believe that the person against whom the deadly force was used:
> >
> > > a. unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
> > >
> > > b. unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
> > >
> > > c. was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; and
> >
> > 2. the actor did not provoke the person against whom the force was used; and
> >
> > 3. the actor was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

---

[5] Appellant did not object to the submission of the presumption-of-reasonableness charge at the charge conference, though he did object to the prosecution's reference to it during voir dire. However, a defendant cannot preserve charge error during jury selection. *See Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. App. 1996) (noting that to preserve charge error, defendant must object to charge or request submission of particular instruction or question). Thus, appellant's objection to the submission of the presumption-of-reasonableness charged is waived. *See Sanchez v. State*, 209 S.W.3d 117, 120–21 (Tex. Crim. App. 2006) (holding that errors subject to procedural default may not be remedied by appellate court as unassigned error unless error was preserved).

> If you find the State has disproved one or more of elements 1, 2, or 3 listed above, the presumption does not apply and you are not required to find that the actor's belief was reasonable.

*See id.* § 9.32(b) (establishing presumption of reasonableness).

During deliberations, the jury submitted a written question to the trial court, which asked:

> In reference to Section 3, Page 14, does the admitted commission of a crime, sale of a controlled substance, negate the basis of a claim of self-defense?

Appellant urged the trial court to respond to the question with "a simple 'no,'" arguing that the question showed that the presumption-of-reasonableness instruction, included in the abstract portion of the charge without objection, had confused the jury. Appellant argued that a simple one-word response of "no" would provide additional guidance on the applicable law and clarify the jury's confusion caused by the alleged confusing instruction. The State, in contrast, urged the trial court to simply refer the jury to the charge, arguing that the charge accurately set forth the applicable law and that a substantive response, however short, would constitute an improper comment on the evidence. The trial court agreed with the State.

In response to the jury's question, the trial court wrote on the form document, "You have been given the law." The trial court also checked a box on the form stating, "The court under the law is not permitted to answer the question

17

that you have presented. Please refer to and follow the instructions already given you. And continue your deliberations."

## B.     Applicable law and standard of review

"Although the trial court ordinarily provides instructions to the jury in their entirety before the jury retires to deliberate, the court may give further written instructions upon the jury's written request for additional guidance regarding applicable law." *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. art. 36.16 (providing that court may give "further charge" to jury upon jury's request after parties complete closing arguments), *id.* art. 36.27 (providing that court "shall answer any [jury] communication in writing"). A trial court's substantive response to a jury question "essentially amounts to a supplemental jury instruction" and is therefore governed by the "same rules" that "generally govern jury instructions." *Lucio*, 353 S.W.3d at 875.

"Because a trial court's answer to a jury's question must comply with the same rules that govern charges, the trial court, as a general rule, must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury." *Id.*; *see* TEX. CODE CRIM. PROC. art. 36.14. "If the request from a jury for additional instructions is not proper, the court should refer the jury to the court's

charge." *Ash v. State*, 930 S.W.2d 192, 196 (Tex. App.—Dallas 1996, no pet.) (citing *Gamblin v. State*, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972)).

## C.    Analysis

The jury's question asked, "In reference to [the presumption of reasonableness instruction], does the admitted commission of a crime, sale of a controlled substance, negate the basis of a claim of self-defense?" No provision of the Penal Code specifically answers this question although the answer can be easily derived from the code's more general provisions as well as caselaw construing same. *See, e.g.*, *Barrios v. State*, 389 S.W.3d 382, 393 (Tex. App.—Texarkana 2012, pet. ref'd) ("When the accused is engaged in other criminal activity, the statute does not disqualify the accused from defending his or her use of force, it simply removes the presumption that his or her use of force was reasonable—a significant difference."). Thus, the jury's question asked the trial court for a non-statutory instruction.

But, non-statutory instructions are generally impermissible. As the Texas Court of Criminal Appeals has explained, "[W]e reject non-statutory instructions as improper comments on the weight of the evidence where such instructions are unnecessary to clarify the law and they also draw the jury's attention to a particular type of evidence." *Beltran De La Torre v. State*, 583 S.W.3d 613, 618 (Tex. Crim. App. 2019).

Thus, to determine whether the trial court erred in refusing to answer the jury's question, we consider whether an answer (1) was unnecessary to clarify the law and (2) would have drawn the jury's attention to a particular type of evidence.

### 1.	Answering the jury's question was unnecessary to clarify the law

Appellant argues that an answer to the jury's question was necessary to clarify the law because the charge erroneously instructed the jury on the presumption of reasonableness and thereby confused the jury. Appellant argues that the trial court erred in giving the presumption-of-reasonableness instruction because it was undisputed at trial that appellant engaged in criminal activity when he used deadly force. For this reason, he argues, the statutory presumption of reasonableness was not law applicable to the case, so the instruction was erroneous and confusing, as evidenced by the jury's question, which showed that the jury misconstrued the instruction to mean that appellant's criminal activity negated his claim of self-defense. We disagree.

First, it was not undisputed that appellant was engaged in criminal activity at the time of the shooting. During voir dire, appellant offered to stipulate to engaging in criminal activity at the time of the shooting, but he never actually made such a stipulation. In his opening statement, appellant argued that there was "no evidence" that he was "a part of the negotiations" or "in control" of the drugs, which, he added, had "never been tested," thereby suggesting a controlled substance was

never even brought to Wilson's apartment. Then, during closing argument, appellant's counsel told the jury that they should have doubts about the witnesses' credibility and the "kind of investigation" that was done, again suggesting that appellant never actually possessed a controlled substance.

At trial, neither witness involved in the alleged drug transaction could say what was in the bottles, and the alleged drugs were never found or tested.

Thus, it was disputed whether appellant was engaged in criminal activity—possession with intent to distribute a controlled substance—at the time of the shooting, and the evidence presented at trial does not conclusively resolve the issue either way. Whether appellant was involved in criminal activity was a question for the jury.[6] The trial court could not be satisfied beyond a reasonable doubt that the evidence clearly precluded a finding that appellant did not engage in criminal activity. Thus, the presumption of reasonableness was properly submitted to the jury. *See* TEX. PENAL CODE § 2.05(b).

Second, the presumption-of-reasonableness instruction was not confusing; it accurately stated the law, and the jury's question does not rebut the presumption

---

[6]     Appellant argues that he was committing the offense of felon in possession of a firearm and therefore would not have been entitled to the submission of the presumption of reasonableness. However, no evidence of appellant's prior felony conviction was introduced until the punishment phase. The jury would not have known that appellant was a felon in possession of a firearm during the guilt/innocence phase.

that the jury followed the charge's instructions. *See, e.g.*, *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998) (holding that jury note indicating improper consideration of parole did not overcome presumption that jurors followed court's contrary instructions); *Thompson v. State*, No. 02-18-00230-CR, 2019 WL 1065925, at *8 (Tex. App.—Fort Worth Mar. 7, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that presumption that jury followed law not overcome when jury note indicated jury improperly considered parole "at some preliminary point in deliberations" and trial court's response referred jury to correct instruction in charge).

We hold that an answer to the jury's question was unnecessary to clarify the law. *See Walters*, 247 S.W.3d at 212–14 (holding that trial court did not err in denying non-statutory instruction informing jury that it could consider prior verbal threats in deciding issue of self-defense when (1) charge already covered substance of instruction and (2) instruction would have improperly focused jury's attention on specific type of evidence supporting finding of self-defense); *Brown*, 122 S.W.3d at 802–03 (rejecting jury instruction that "intent or knowledge may be inferred by acts done or words spoken" because, while neutral, it focused the jury's attention on evidence that might support finding of criminal intent, improperly told jury how to consider certain evidence, and improperly instructed jury on rule of appellate-evidentiary-sufficiency review).

## 2. Answering the jury's question would have drawn attention to a particular type of evidence

We now consider whether an answer to the jury's question would have drawn the jury's attention to a particular type of evidence.

Under Texas law, a defendant's engagement in criminal activity at the time of the offense does not preclude a claim of self-defense, but the jury may consider it in determining the reasonableness of the defendant's belief that the use of deadly force was immediately necessary. Evidence of the defendant's criminal activity not only precludes the presumption of reasonableness, but it can also support a finding that the defendant's belief was unreasonable, thereby negating self-defense entirely. In fact, the State argued as much in this case, given that appellant arrived at a drug deal with a firearm.

Had the trial court responded to the jury note by saying, "No," or "No, the admitted commission of a crime does not negate the basis of a self-defense claim," the trial court would have implicitly endorsed appellant's theory of the case and drawn the jury's attention away from the evidence that appellant used deadly force while engaged in a drug deal and toward the evidence that appellant used deadly force in response to Valentine's use of physical force to prevent appellant from leaving the apartment. By drawing the jury's attention away from one type of evidence and toward another type of evidence, an answer to the jury's question could have impacted how the jury weighed the evidence of the reasonableness of

23

appellant's belief in his need to use deadly force. We hold that an answer to the jury's question would have drawn the jury's attention to a particular type of evidence.

Because an answer to the jury's question was unnecessary to clarify the law (as the charge set forth standard statutory instructions from which the answer could be derived) and would have drawn the jury's attention to a particular type of evidence (i.e., evidence supporting appellant's self-defense claim), we hold that the trial court did not err in refusing to answer the question and instead referring the jury to the charge. *See Walters v, State*, 247 S.W.3d 204, 212–14 (Tex. Crim. App. 2007) (holding that trial court did not err in denying non-statutory instruction informing jury that it could consider prior verbal threats in deciding issue of self-defense when (1) charge already covered substance of instruction and (2) instruction would have improperly focused jury's attention on specific type of evidence supporting finding of self-defense); *see also Brown v. State*, 122 S.W.3d 794, 802-03 (Tex. Crim. App. 2003) (rejecting requested jury instruction that "intent or knowledge may be inferred by acts done or words spoken" because, while neutral, requested instruction focused jury's attention on evidence that might support finding of criminal intent, improperly told jury how to consider certain evidence, and improperly instructed jury on rule of appellate-evidentiary-sufficiency review).

Accordingly, we overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consisted of Chief Justice Radack and Justices Goodman and Farris.

En Banc reconsideration was requested. TEX. R. APP. P. 49.7.

A majority of the justices of the Court voted in favor of reconsidering the case en banc.

The en banc court consists of Chief Justice Radack and Justices Kelly, Goodman, Landau, Hightower, Countiss, Rivas-Molloy, Guerra, and Farris.

Chief Justice Radack, writing for the majority of the en banc court, joined by Justices Kelly, Landau, Hightower, Countiss, Rivas-Molloy, and Guerra.

Justice Goodman, dissenting.

Justice Farris, dissenting.

Publish. TEX. R. APP. P. 47.2(b).