**Opinion issued June 29, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00709-CR

———————————

### JAVAN OXAVIA WILLIAMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 176th District Court
Harris County, Texas
Trial Court Case No. 1537335

## MEMORANDUM OPINION

Javan Oxavia Williams appeals his conviction for murder. Williams raises three issues: (1) there was insufficient evidence to support his conviction; (2) hearsay testimony identifying Williams as the shooter should not have been

admitted; and (3) Williams's custodial statements should have been suppressed. Because the evidence was properly admitted and supports the conviction, we affirm.

## Background

One evening, Williams shot and killed Charlie "Pete" Bennett, Jr., with whom he argued the day before. The night of the murder, Williams asked A. Simmons, Bennett's girlfriend, if she could drive him to pick up cocaine. Simmons agreed, and she and Bennett picked up Williams. Simmons was driving, Bennett was in the front passenger seat, and Williams was in the backseat. They first picked up marijuana before driving to the Worthington Apartments in Houston. After arriving at the apartment complex, Williams apologized to Bennett for their earlier argument. But a few minutes later, Williams shot Bennett in the neck.

After shooting Bennett, Williams shot Simmons in the face. Simmons raised her arms defensively, so the bullet passed through both of her wrists. Williams checked to see if the two were dead before fleeing. Unbeknownst to Williams, Simmons survived. She called her mother, R. Chaney, and drove herself and Bennett to a nearby hospital. During their phone call, Simmons told her mother that a man named Javan shot her and Bennett. Bennett was pronounced dead at the hospital.

While in the hospital, Simmons was interviewed by detectives from the Houston Police Department. Simmons struggled to communicate because of her injuries, but she identified a suspect. Using the information Simmons provided, the

detectives obtained surveillance video from the Worthington Apartments showing Simmons's vehicle arriving on the property the night of the shooting and leaving 20 minutes later.

Williams remained at large for three months, until law enforcement arrested him without incident at a Houston motel. As he was taken into custody, Williams made three statements to the arresting officers: (1) "Houston Police Department couldn't catch me, so y'all had to come find me"; (2) "HPD couldn't get me, so y'all had to, huh?"; and (3) "I'm just tired of running and looking over my shoulder."

After his arrest, Williams was indicted for murder. While in pretrial detention, he met another inmate, J. Clark. Clark testified at trial that Williams admitted shooting Bennett and Simmons:

> [Williams] thought the girl–he just did 60 days in jail and he thought the girl told on him for selling pills or something. And they went and picked the girl up–the girl come over there where he was at and he got in the back seat of the car and shot the girl in the face and then shot–or shot the guy–shot–I don't know which one first, but he shot a guy and a girl, shot the girl in the face and killed the guy. And he get out of the car and walked off. And he thought the girl was dead, too, I guess. And I think she drove herself to the hospital.

The jury found Williams guilty of Bennett's murder and sentenced Williams to life in prison.

3

**Sufficiency of the Evidence**

Williams contends that the evidence legally cannot support his conviction because there is overwhelming evidence that he did not commit murder. The State responds that the jury was free to consider the evidence and find Williams guilty.

**A.     Standard of Review**

We review the legal sufficiency of the evidence by considering all the evidence, in the light most favorable to the jury's verdict, to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We defer to the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. Our role is that of a due process safeguard, and we consider only whether the factfinder reached a rational decision. *See Malbrough v. State*, 612 S.W.3d 537, 559 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd); *see also Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (the reviewing court's role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally").

"In reviewing the legal sufficiency of the evidence, a court must consider both direct and circumstantial evidence, and any reasonable inferences that may be drawn from the evidence." *Malbrough*, 612 S.W.3d at 559 (citing *Clayton v. State*, 235

S.W.3d 772, 778 (Tex. Crim. App. 2007); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Circumstantial and direct evidence are equally probative in establishing the defendant's guilt, and circumstantial evidence alone can be enough. *Malbrough*, 612 S.W.3d at 559 (citing *Clayton*, 235 S.W.3d at 778). "For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt." *Id.* The appellate court "considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict." *Id.* (citing *Wise*, 364 S.W.3d at 903; *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We review factual sufficiency of the evidence under the same standard of review as that for legal sufficiency. *See Edwards v. State*, 497 S.W.3d 147, 156 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

**B.    Analysis**

Williams was charged with murder under Texas Penal Code subsection 19.02(b)(1), which makes it an offense to "intentionally or knowingly [cause] the death of an individual"; and subsection (b)(2), which makes it an offense to "[intend] to cause serious bodily injury" while "commit[ting] an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1)–(2). The State alleged that Williams committed murder by shooting Bennett with a firearm.

Simmons testified that Williams put a gun to Bennett's neck and shot him. *See Arrellano v. State*, 555 S.W.3d 647, 651 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (testimony from one eyewitness can be sufficient to support a conviction) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). Dr. V. Podduturi, an assistant medical examiner with the Harris County Institute of Forensic Sciences, testified that Bennett died from a single close-range gunshot wound to his neck, with the bullet entering the left side of the neck and exiting from the right. Clark testified that while he was incarcerated with Williams, Williams admitted repeatedly that he shot both Bennett and Simmons. While Williams argued in closing that the jury should disregard Clark's testimony, the jury could choose to believe it. *See Harper v. State*, 540 S.W.3d 223, 231 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (finding evidence sufficient in capital murder case based on jailhouse informant's testimony).

Chaney, Simmons's mother, also testified that Simmons called her shortly after Simmons was shot. Simmons had told Chaney that Williams shot her and Bennett. Williams raised the fact that Chaney did not tell law enforcement about Simmons's identification when she was interviewed at the hospital, but the jury may weigh the evidence presented to them. *Malbrough*, 612 S.W.3d at 559.

Even so, Williams argues that the jury's verdict is unsupported because his fingerprints were not found in Simmons's vehicle, his DNA was not found in

6

Simmons's vehicle, surveillance footage did not show him, Clark's testimony was compromised, and law enforcement failed to conduct a thorough investigation. But the State need not provide this type of evidence to meet its burden. *See Arrellano*, 555 S.W.3d at 651 (the State need not present DNA, fingerprint, or video evidence to meet its burden of proof) (citing *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)). Although Williams has identified possible weaknesses in the State's case, we presume the jury weighed the evidence and resolved any concerns in favor of the verdict. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012) (jury is the sole judge of witness credibility and of the weight given to any evidence).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1)–(2). The assistant medical examiner testified that Bennett was killed by a gunshot wound to the neck. Simmons, who knew Williams, identified Williams as the person who shot Bennett, and her testimony was supported by Clark's and Chaney's testimony. *See Arrellano*, 555 S.W.3d at 651. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that Williams shot and killed Bennett.

7

We overrule Williams's first issue.

## Hearsay

Williams contends that Chaney's testimony about what Simmons told her was inadmissible hearsay. The State responds that Simmons was still under the stress of being shot and witnessing Bennett's murder when she made the statements, making the testimony admissible as an excited utterance and present sense impression.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial court's decision was outside the zone of reasonable disagreement, we uphold the ruling. *Id*.

### B. Analysis

Hearsay is a statement, other than one made by the declarant testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). To be admissible, hearsay must fit into an exception provided by a statute or the rules of evidence. TEX. R. EVID. 802.

The rules of evidence provide an exception to the hearsay rule for an excited utterance, described as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). The rationale is that statements resulting from a startling event or condition

are involuntary and do not allow the declarant an adequate opportunity to reflect upon the events or to formulate self-serving declarations, thereby ensuring enough trustworthiness to fall outside the hearsay prohibition. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). There is also an exception for a "present sense impression," which is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." TEX. R. EVID. 803(1). The rationale for this rule is that "the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes." *Fischer v. State*, 252 S.W.3d 375, 381 (Tex. Crim. App. 2008) (internal quotations and footnote omitted). "If the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability of the statements and renders them inadmissible under the rule." *Id.*

Simmons testified that she called Chaney just after Williams shot her and Bennett. During the call, Simmons was bleeding profusely from her face and wrists, and she described feeling "angry, sad, and overwhelmed." Chaney testified that Simmons was scared during their conversation. Chaney recalled that she struggled to understand Simmons over the phone and that she told Simmons to get whatever Simmons had in her mouth out so that she could understand her. Simmons responded that her "face is shot off." Simmons told Chaney that Bennett was next to her and

bleeding from a hole in his neck. Chaney told Simmons to use her hand to try to stop Bennett's bleeding, but Simmons said the bleeding continued.

The testimony establishes that when Simmons made the call to Chaney she was gravely wounded and scared. *See Campos v. State*, 186 S.W.3d 93, 99 (Tex. App—Houston [1st Dist.] 2005, no pet.) (primary consideration when determining whether excited utterance exception applies is whether the declarant was still dominated by emotions of event). Given Simmons's shaken and excited demeanor, it is reasonable to infer that she was under the sway of the emotions of her attack when she spoke to Chaney. *See id.* (citing *Zuliani*, 97 S.W.3d at 595–96); *see Douglas v. State*, Nos. 01-08-00463-CR, 01-08-00464-CR, 2010 WL 4264541, at *4 (Tex. App. Houston [1st Dist.] Oct. 28, 2010, no pet. pet.) (mem. op., not designated for publication) (where record showed that aggravated assault complainant was "weak, scared, bleeding, [and] seriously injured from two gunshots to the abdomen," her statement "I don't think I'm going to see my kids again" was admissible as an excited utterance). Thus, the trial court did not abuse its discretion by admitting the testimony in as an excited utterance. *See* TEX. R. EVID. 803(2).

We overrule Williams's second issue.

## Motion to Suppress

In Williams's final issue, he contends that the statements he made to HPD Officer A. Ruggeroli should have been suppressed because he was not read his

10

*Miranda* warnings beforehand and the statements were not recorded. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1965); Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 38.22 § 3(a). The State responds that the statements were given freely and did not result from any interrogation.

## A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence involving an alleged *Miranda* violation under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). When reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).

We give almost total deference to a trial court's determination of historical facts but review pure questions of law de novo. *Alford*, 358 S.W.3d at 652. We also give almost total deference to a trial court's rulings on mixed question of law and fact if the question turns on the credibility and demeanor of witnesses. *Id.* But if credibility and demeanor are unnecessary to the resolution of a mixed question of law and fact, we review the question de novo. *Id.*

11

Put differently, when reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. We will uphold the trial court's ruling if it is supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## B.     Analysis

In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Interrogation refers to (1) "express questioning" and (2) "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (internal footnote omitted).

Williams's claim also implicates Article 38.22, which requires that for a defendant's statement that was "made as a result of custodial interrogation" to be admissible it must have been electronically recorded. TEX. CODE CRIM. PROC. art. 38.22 § 3(a). The term "custodial interrogation" under Article 38.22 has the same

meaning as it does under the Fifth Amendment. *See Nguyen v. State*, 292 S.W.3d 671, 677 n.27 (Tex. Crim. App. 2009).

A custody determination requires examination of the circumstances of the interrogation and whether a reasonable person in those circumstances would have felt that they were not free to leave. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). The parties do not dispute that Williams was in custody when he made the statements at issue. Williams was being handcuffed, had been arrested, and was being transported by Officer Ruggeroli to the police department. *See id.* at 167–68 (a person is in custody when they are physically deprived of their freedom in any significant way).

Officer Ruggeroli denied asking Williams any questions while Williams was being arrested and transported. He testified that while Williams was placed into handcuffs Williams stated, "Houston Police Department couldn't catch me, so y'all had to come find me." Then, while Williams was in the back of his vehicle Williams stated, "[s]o HPD couldn't get me, so y'all had to, huh?" At which point he informed Williams that he was an officer with HPD. Williams also said he was "tired of running and looking over [his] shoulder."

There is no evidence that any interrogation took place. As stated, interrogation is when a defendant faces express questioning or its functional equivalent that law enforcement should know is "reasonably likely to elicit an incriminating response."

13

*Warren v. State*, 377 S.W.3d 9, 17 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Innis*, 446 U.S. at 300–01, and *Jones v. State*, 795 S.W.2d 171, 174–75 (Tex. Crim. App. 1990)). Statements volunteered by a defendant without any compelling influence are not considered statements made under interrogation. *Warren*, 377 S.W.3d at 17 (citing *Jones*, 795 S.W.2d at 174–76 & n.3).

Because Williams was not being interrogated when he made the statements to Officer Ruggeroli, the trial court did not err by denying his motion to suppress. *Miranda*, 384 U.S. at 479; TEX. CODE CRIM. PROC. art. 38.22, § 5 ("Nothing in this article precludes the admission of a statement . . . that does not stem from custodial interrogation . . . .").

We overrule Williams's final issue.

## Conclusion

We affirm the judgment of the trial court.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).

14